UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH B. PITCHER,                  Case No. 1:12-cv-215

       Plaintiff,                           Weber, J.

v.                                                   Bowman, M.J.

LAWRENCE WALDMAN, et al.,

       Defendants.

**REPORT AND RECOMMENDATION**

Plaintiff Kenneth Pitcher initiated this lawsuit in order to recover legal fees that Plaintiff allegedly incurred in connection with a previously filed lawsuit. The prior lawsuit was filed by Defendants against Plaintiff in state court, but – like the instant litigation – was subsequently removed to this Court. The parties have filed cross-motions for summary judgment (Docs. 22, 24), which have been referred to the undersigned magistrate judge for a Report and Recommendation ("R&R"). (Doc. 41). I now recommend that Defendants' motion be granted, and that Plaintiff's motion be denied.

**I. Factual and Procedural Background[1]**

Plaintiff Kenneth Pitcher and Defendant Larry Waldman were once partners in an accounting firm known as Waldman & Company, CPAs. The accounting firm was established in the early 1970s by Waldman. In the mid-1980's, Waldman hired Pitcher

---

[1]For purposes of the pending motions, the factual and procedural background has been compiled from the undisputed portions of the parties' respective Proposed Findings of Fact, as well as from the

and another individual (who is not a party to this case), Michael Enders, as associate accountants.

Over time, Pitcher and Enders acquired ownership interests and the firm changed its name to Waldman, Pitcher & Company.  However, in September 2009, Pitcher and Enders took steps to leave the firm and to establish their own accounting firm, known then as KPE Services, Inc.[2]  As part of the dissolution of Waldman, Pitcher & Company, the parties entered into a Settlement and Stock Redemption Agreement ("Settlement Agreement") dated October 22, 2009.  Following dissolution through execution of the Settlement Agreement, the firm of Waldman, Pitcher & Co., CPA's P.S.C. became Defendant Waldman & Company CPA's P.S.C.

Pitcher and Defendants agreed that Pitcher's and Enders' profit sharing plan assets were to be distributed.  The Settlement Agreement provided for the distribution of assets as follows:

> **3.4** *2009 Profit Sharing Plan Distribution*
>
> The Company, Waldman, Pitcher and Enders agree that each Pitcher and Enders have already funded their entire 2009 401(k) contributions. Waldman and/or the Company shall distribute all profit sharing plan assets of Pitcher and Enders on or before November 30, 2009 or within 15 days after the amounts of such contributions are reported to them by Schneider

---

records of this Court in related litigation.

[2]As previously detailed in other records of this Court, the acrimonious breakup of the original accounting firm has generated numerous lawsuits between the parties in both state and federal court. *See, e.g., Pitcher v. Waldman*, Case No. 1:11-cv-148, Doc. 95, R&R filed 10/23/12 at 2 and n. 2 (discussing cases).  In the referenced R&R, the undersigned recommended that Case No. 1:11-cv-148 proceed to trial on Plaintiffs' claim that Defendants committed tax fraud in violation of 26 U.S.C. §7434, when Defendant Waldman issued to Pitcher and Enders 1099 and W-2 forms in 2010 and 2011, concerning sums distributed under the Settlement Agreement.

2

> & Brown in accordance with the distribution forms completed by Pitcher and Enders. Pitcher shall remain a co-trustee of the Company's profit sharing plan until all such distributions due to Pitcher and/or Enders from the profit sharing plan have been distributed to them. After all such distributions have been made to Pitcher and/or Enders, Pitcher shall execute the resignation letter attached hereto…and shall be removed as a co-trustee from the Company's plan. Pitcher and Enders shall provide an accounting of their Company retirement accounts as of the date of the distribution to their IRA's to Waldman and/or the Company by January 31, 2010.

(Doc. 36 at 2).

Following the distribution of the profit sharing plan assets to Pitcher and Enders, Waldman filed suit against Pitcher and Enders in the Hamilton County Municipal Court, seeking to recover the amount of $810.52, which Waldman alleged was the amount of administrative expenses incurred as a result of the distribution. Pitcher removed the action from state court to this Court under ERISA. *See Waldman v. Pitcher*, Civil Case No. 1:10-cv-238. In June 2010, Waldman was diagnosed with cancer, leading to an extension of pretrial deadlines in Case No. 1:10-cv-238, and of similar deadlines in a second case then still pending in state court.

On December 10, 2010, Waldman moved to voluntarily dismiss Case No. 1:10-cv-238 in this Court, arguing that his cancer had caused him to "reevaluate his resources and priorities." (Case No. 1:10-cv-238, Doc. 30 at 4, citing Doc. 24 at 2).[3] Two hours and fifteen minutes later, Pitcher moved for summary judgment in the same

---

[3] The R&R and other documents filed in Case No. 1:10-cv-238 have been attached as exhibits to the parties' cross-motions for summary judgment in this case, but have been filed under seal in this case. (See, e.g., Doc. 24-17). For the convenience of this Court, the original (unsealed) documents in Case No. 1:10-cv-238 are referred to by the docket numbers of that case.

3

case. (*Id.* at Doc. 22).

Subsequently, Pitcher filed a memorandum in opposition to Defendant's motion to dismiss, arguing that dismissal should either not be permitted at all, or alternatively, that dismissal should be conditioned upon Waldman's payment of attorney's fees. After extensive briefing by both parties, on June 21, 2011, the undersigned filed an R&R in Case No. 1:10-cv-238 recommending that the Court grant Waldman's motion to dismiss without the payment of attorney's fees. (*Id.*). Pitcher filed written objections, again arguing that Waldman should be required to pay in excess of $30,000.00 in fees, plus an unspecified amount in costs, as a condition of dismissal. On September 15, 2011, Chief District Judge Dlott adopted the R&R, overruling Pitcher's objections and granting Waldman's motion to voluntarily dismiss Case No. 1:10-cv-238 without prejudice and without the payment of attorney's fees. (*Id.* at Doc. 38).

A month later on October 19, 2011, Pitcher sent Waldman a letter demanding reimbursement of the same attorney's fees that Pitcher allegedly incurred in defending Case No. 1:10-cv-238, arguing that the profit-sharing plan's Trust Agreement required indemnification of those fees. The total amount for which Pitcher then sought reimbursement was $45,507.88.[4] Waldman refused to reimburse the fees on grounds

---

[4]Waldman also objects to the amount of fees, noting that the amount for the defense of the original lawsuit concerning $810.52 grew from $30,739 (see Case No. 10-cv-238, Doc. 31) to $45,507.88 without explanation. In light of the resolution of this dispute in Defendants' favor on other grounds, it is unnecessary to review the propriety of the fees in dispute. Nevertheless, the Court would be remiss were it not to point out that the amount of attorney's fees expended by **both** parties in this case and the multitude of related cases quite obviously exceeds any type of benefit that could be achieved by either party, had either employed a cost-benefit analysis. Simply put, the extreme level of personal animosity that is well-documented in both state and federal cases between Waldman and Pitcher provides stark

4

that the referenced documents did not require him to do so. In response, Pitcher initiated new litigation in state court, arguing that Defendants are required to reimburse him for the previously incurred fees under both the Settlement Agreement and the Trust Agreement. On March 14, 2012, Defendants removed the case to this Court.

At all times relevant to this litigation, both Pitcher and Waldman were Trustees of the Trust, and Defendant Waldman & Co. was the Plan Administrator. Section 12.1 of the Trust Agreement indemnifies a Trustee for actions:

> …taken by the Trustee in good faith in accordance with the terms of this Agreement, written instructions or directions of the employer or the Plan Administrator, or upon the opinion of the Employee's legal counsel; provided, however, that the Employer is not obligated to indemnify the Trustee unless the Trustee acts with the care, skill, prudence and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims.

(*See* Doc. 24-17, Exhibit Q). Although the parties agree that §12.1 of the Trust Agreement would provide the basis for any indemnification of Pitcher's legal fees, they strongly disagree about whether Pitcher incurred those fees "in good faith" and in his capacity as a Trustee, acting "in accordance with …written instructions or directions of the employer or the Plan Administrator," and with "care, skill, prudence and diligence." The parties additionally disagree about whether Pitcher himself, or Pitcher's new accounting firm, "incurred" the fees.

In addition to relying upon Section 12.1 of the Trust Agreement for

---

contrast to the professional and courteous behavior of their counsel, at least as observed by this Court. This is not the first time in which the motive for continued litigation appears to be wholly divorced from

indemnification of the legal fees he alleges that he paid as a Trustee acting "in good faith," Pitcher relies upon Sections 3.2 and 3.11 of the Trust Agreement to support his claim for fees. Those provisions state, in relevant part:

> 3.2 Dealings with Plan Administrator: The Trustee shall make distributions from the Trust to the persons, in the manner, in amounts, and for the purposes specified in the written directions of the Plan Administrator. ...
>
> 3.11 Multiple Trustees: If more than two persons act as Trustee, a decision of the majority of such persons controls with respect to any decision regarding the administration or investment of the trust Fund or of any portion of the Trust Fund with respect to which such persons act as Trustee. However, the Trustees may authorize one or more of the Trustees to sign documents and/or effect any transaction on behalf of this Trust.

(Doc. 24-23 at 9, 11). Pitcher asserts that he was authorized as a Trustee to make the distributions in the manner specified in the parties' written 2009 Settlement Agreement, and that he incurred substantial legal fees in excess of $45,000, as a result of his defense of those mandated distributions, when Waldman sued him for $810.52 in administrative costs in state court.

**II. Analysis of Cross-Motions**

**A. Standing**

Defendants argue that Pitcher did not actually incur any attorney's fees for the defense of the prior litigation, because Greenebaum, Doll & McDonald billed Pitcher's new accounting firm, and the firm of Pitcher, Enders & Drohan, CPAs, Inc. paid the bill for all fees incurred. Therefore, Defendants contend that Pitcher lacks standing in this

---

economic motivations, but it is one of the more notable that this Court has observed.

case to make a claim for indemnification.

In response, Pitcher asserts that he reimbursed his accounting firm for payment of the legal fees. Pitcher has attached, as an exhibit to his response, a check reflecting that reimbursement. Defendants do not dispute that payment, nor do Defendants provide authority to support the proposition that the initial payment by Plaintiff's accounting firm, on behalf of Pitcher, extinguishes standing.[5] Therefore, the Court concludes that Pitcher has established standing.

**B. Waiver**

The Waldman Defendants more persuasively argue that the issue of attorney's fees has already been addressed by this Court, when it declined to make an award of attorney's fees to Pitcher upon dismissal of the prior litigation. Defendants argue generally that Pitcher was required to state at that time "all of the reasons he believed he was entitled to such fees, so that this Court could decide the issue in one action, rather than in serial suits." (Doc. 24 at 5). The Waldman Defendants specifically contend that Pitcher both could have, and should have, raised arguments pertaining to the Trust Agreement and Settlement Agreement as a compulsory counterclaim at the time Pitcher filed his answer. Instead, Pitcher asserted entitlement to fees only in opposition to the Defendants' motion for a voluntary dismissal under Rule 41(a)(2),

---

[5]As discussed *infra*, at least arguably, Pitcher incurred the fees – regardless of who may have initially paid the bill on his behalf.

7

citing both that rule and equitable principles under ERISA.[6]

In the underlying case from which the fees allegedly originated, Case No. 1:10-cv-238, the issue of who should pay the fees was vigorously contested, albeit in a different context. At the time of dismissal of that action, the undersigned was called upon to determine whether or not the Waldman entities (then Plaintiffs) should be permitted to voluntarily dismiss their $810 lawsuit against Pitcher without prejudice and without the payment of Pitcher's "substantial" legal fees[7] under Rule 41(a)(2).

The undersigned reasoned that a key consideration was whether an unconditional dismissal without payment of fees would cause Pitcher to "suffer plain legal prejudice," considering "such factors as the defendant's effort and expense of preparation for trial, excessive delay and lack of diligence on the part of the plaintiff in prosecuting the action, insufficient explanation for the need to take a dismissal, and whether a motion for summary judgment has been filed by the defendant." (*Id*. at 5, citing *Grover by Grover v. Eli Lilly and Co.*, 33 F.3d 716 (6th Cir. 1994)). The court concluded that "analysis of the relevant factors advocates in favor of granting

---

[6]In his motion for summary judgment in this case, Pitcher resurrects an ERISA argument arguably identical to that presented in the earlier litigation. (*See* Doc. 22, at 12, arguing that he is entitled to indemnity of the attorney's fees as equitable relief under 29 U.S.C. §1132(a)(3)).

[7]The Court need not reach issues concerning the amount of fees expended. However, in the litigation in which those fees were allegedly incurred, this Court previously commented on the claim for "substantial fees, despite the relatively brief time span of this litigation." (Case No. 1:10-cv-238, Doc. 30 at 4). Although the underlying ERISA dispute was atypical because it required "some" discovery, the Court noted that "the Defendant [Pitcher] points only to relatively routine written discovery and a single deposition (of Waldman) as support for 'substantial' litigation costs," and that Defendant's motion for summary judgment was supported by documents in the administrative record and "hornbook law," rather than "extensive discovery." (*Id.* at 7).

[Waldman's] motion to dismiss without the imposition of [Pitcher's] defense costs." (*Id.*). The undersigned specifically cited the relatively short life span of the litigation, the fact that the only court appearance by any party was a telephonic scheduling conference, and that Pitcher's motion for summary judgment was time-stamped *after* [Waldman's] motion to dismiss, belying any suggestion that the Waldman parties were motivated to dismiss by concern that Pitcher would prevail. (*Id.* at 6). The undersigned also rejected Pitcher's argument that costs should be imposed based upon Waldman's alleged motivation in filing suit in order to "harass, embarrass, and abuse" Pitcher. (*Id.*).

In response to the 10-page R&R filed by the undersigned, both parties filed objections, responses, and replies thereto (including supplemental briefs and exhibits) totaling 219 pages. (*See* Docs. 31, 32, 33, 34, 36, 37). Suffice it to say, the parties' arguments and exhibits appear to have been exhaustive. Ultimately, Chief District Judge Dlott overruled all objections and adopted the R&R for the opinion of the Court in a succinct 2-page Order, thereby denying Pitcher's claim for fees, and overruling Pitcher's objection to the voluntary dismissal of Waldman's lawsuit without prejudice. (Doc. 38).

Issues involving the doctrines of res judicata (claim preclusion) or collateral estoppel (issue preclusion) would appear to be natural to consider, given that the same parties were involved in the prior action as in the present case, and the claim for attorney's fees arises out of the same subject matter of the prior litigation. However, Waldman does not strictly advance the application of either doctrine of preclusion,

9

instead presenting a more general "waiver" argument.

Because this Court dismissed the prior litigation "without prejudice" under Rule 41(a)(2), Pitcher responds that he cannot be deemed to have waived the contractual indemnity arguments that he newly presents in this lawsuit. By analogy, the traditional concept of res judicata requires a prior final, valid decision on the merits. *See In re Fordu*, 201 F.3d 693, 703-704 (6th Cir. 1999)(explaining elements of preclusion in context of Ohio law). By contrast, Plaintiff points out that the dismissal of a complaint *without prejudice* typically places the parties in the same position as if the lawsuit had never been filed. *See, e.g., Shepherd v. Wellman*, 313 F.3d 963, 971 (6th Cir. 2002)(stating the principle in dictum, citing *Borner v. Ribicoff*, 304 F.2d 427, 429 (6th Cir. 1962)). Drawing a comparison to the new indemnity claims he presents in this case, Pitcher cites a Ninth Circuit case that holds that a plaintiff who dismisses a lawsuit without prejudice can re-file and add new claims without concern that his failure to include the claims in the first suit will be construed as a waiver in any subsequent suit. *See Cadkin v. Loose*, 569 F.3d 1142, 1149 (9th Cir. 2009). Extending the same reasoning to his new rationale for an award of fees, Pitcher asserts that he cannot be held to have waived the claim presented in the instant lawsuit.

I disagree. The general principle that a dismissal under Rule 41 "without prejudice" places the "parties" (as opposed to the plaintiffs) in the same position that they occupied prior to suit overstates that principle as applied to the facts of this case. Despite the language of a number of cases that refer to a dismissal without prejudice as

applying to the positions of the "parties," analysis of the particular criteria applicable to a dismissal without prejudice under Rule 41(a)(2) makes clear that – at least when dismissal without prejudice is contested as it was here- the *Defendant's* rights have been fundamentally altered by an appealable judgment. In fact, the primary purpose of the provision in Rule 41(a)(2) that permits dismissal to be made subject to fee-shifting or other conditions is for the protection of the defendant's rights. *See Spar Gas, Inc. v. AP Propane, Inc.,* 972 F.2d 348, 1992 WL 172128, at *2 (6th Cir. July 22, 1992)(table, text available on Westlaw); *see also generally, In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1259 (11th Cir. 2006)(advising courts to keep in mind that "Rule 41(a)(2) exists chiefly for protection of defendants")(internal quotation marks and citation omitted).

Thus, "[t]he general rule is that a plaintiff who requests and is granted a voluntary dismissal without prejudice under Federal Rule of Civil Procedure 41(a)(2) cannot appeal that dismissal, because it is not an involuntary adverse judgment." *See Duffy v. Ford Motor Co.,* 218 F.3d 623, 626 (6th Cir. 2000). But the right of a *plaintiff* to appeal a Rule 41(a)(2) dismissal is in contrast to the right of a *defendant* to appeal such a dismissal, who is afforded much greater protection. It is not unusual for a defendant who seeks the imposition of legal fees or other conditions to appeal a Rule 41(a)(2) dismissal that does not contain such conditions. *See, e.g., Bridgeport Music, Inc. v. Universal-MCA Music Pub., Inc.*, 583 F.3d 948 (6th Cir. 2009); *DWG Corp. v. Granada Investments, Inc.*, 962 F.2d 1201 (6th Cir. 1992). To that extent, the doctrine of waiver

11

or preclusion appears fully applicable to Pitcher's new claim for attorney's fees in this case. As stated in comment g of the Restatement (Second) of Judgments, in determining whether the requirement of finality has been satisfied for purposes of applying the bar of waiver, courts will consider whether "the parties were fully heard, …the court supported its decision with a reasoned opinion, [and whether]… the decision was subject to appeal or was in fact reviewed on appeal." *Restatement (Second) of Judgments* §13 (1982). On the record presented, the relevant factors support the application of waiver.

In addition to the more general application of waiver, the undersigned concludes that Pitcher's claim for attorney's fees is barred because it should have been asserted in the prior litigation as a compulsory counterclaim under Rule 13. That rule requires a pleading to "state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction." Rule 13(a), Fed. R. Civ. P.

Pitcher argues that whether or not the claim for fees should have been asserted as a compulsory counterclaim is immaterial based upon the dismissal of the underlying litigation without prejudice. But other courts have held that Rule 13(a) provides a basis for waiver that is independent of the more traditional concepts of waiver represented by doctrines like res judicata and collateral estoppel. *See, e.g., McConnell v. Applied*

12

*Performance Technologies, Inc.,* 2002 WL 32882707 (S.D. Ohio, Dec. 11, 2002)(holding that waiver precluded new lawsuit based upon claims that should have been asserted as compulsory counterclaims under Ohio Rule 13(A) in prior litigation, despite fact that other counterclaims in prior suit had been dismissed without prejudice); *see also Polymer Indus. Prods. Co. v. Bridgestone/Firestone, Inc.,* 211 F.R.D. 312, 318 (N.D. Ohio, 2002)("The doctrine of res judicata is a species different than Rule 13(a), though it also has a claim preclusive effect….The former knocks out claims that have been *actually* litigated and decided, while the latter bars claims that *should* have been presented in a prior action." (internal citation omitted)); *Carnation Co. v. T.U. Parks Constr. Co.*, 816 F.2d 1099, 1103 (6th Cir. 1987)(noting that compulsory counterclaim rule is sometimes described in terms of res judicata and at other times, in terms of waiver or estoppel); *see also generally, Stern v. Whitlatch & Co.*, 91 Ohio App.3d 32, 36, 631 N.E.2d 680, 682 (Ohio Ct. App. 1993)(compulsory counterclaims voluntarily dismissed without prejudice could not be re-filed in second new suit, because to do so would circumvent the purpose of Ohio's compulsory counterclaim rule).

Alternatively, Pitcher argues that the claim was not compulsory, because it was premature at the time the prior litigation was dismissed. He contends that his claim for indemnification "did not exist at the time of the underlying action because: (1) the potential for a judicial finding of bad faith by Pitcher still existed while the underlying litigation was pending, which would have precluded Pitcher's indemnity claim; (2) Defendants did not refuse to indemnify Pitcher until November 2011; [and] (3) Pitcher

13

did not personally pay the legal fees until October 2011…." (Doc. 35 at 6). These contentions are not persuasive.

Two points refute the first argument. First, the potential for a judicial finding of bad faith still exists in the instant lawsuit. In fact, an issue of "bad faith" has been presented; the only difference is that in the prior litigation, the issue was presented in the context of Rule 41(a)(2) and ERISA, whereas in the instant case, the issue is presented in the context of whether the indemnity provision applies, given that the contractual language limits indemnity to actions undertaken "in good faith." Second, because dismissal of the prior litigation was at the request of the Waldman entities and without prejudice to them, Waldman could re-file his claim for $810. To that extent, the issue of "bad faith" remains unresolved, and leaves open the potential for Pitcher's indemnity claim to be "precluded."

Similarly, the argument that Pitcher's claim for indemnification "did not exist" because "Defendants did not refuse to indemnify Pitcher until November 2011" is not well taken. The *existence* of Pitcher's claim for indemnification was never contingent on the Waldman Defendants' response to that claim. In fact, nearly the whole of Pitcher's argument against dismissal of the prior litigation without prejudice was based upon the premise that Pitcher had incurred substantial attorney's fees and costs in fulfilling his role as Trustee and defending the prior litigation, which should be paid for by the Waldman entities. *See generally, Dryvit Systems, Inc. v. Great Lakes Exteriors*, 96 Fed. Appx. 310 (6th Cir. 2004)(contractual claim for attorney's fees should have been

14

presented as compulsory counterclaim in underlying litigation). For the same reasons, Pitcher's contention that his indemnity claim was premature until the date that he reimbursed his accounting firm for the legal fees is unpersuasive. The foundation of Pitcher's claim is that he is entitled to indemnity because he incurred the fees in his defense of the prior litigation and in furtherance of his duties as Trustee, not that he incurred the fees as a result of his obligation to reimburse his accounting firm. He cannot have it both ways.

In short, while this Court has no power to end the litigation war that the parties seem intent to pursue, it can and should end this particular skirmish, on grounds that Pitcher's present suit is barred both by a general doctrine of waiver and by the specific waiver doctrine applicable under Rule 13(a).

### C. The Indemnity Language and §3.4 of the Settlement Agreement

Having determined that the doctrine of waiver clearly bars this lawsuit, the undersigned finds no cause to review the merits of the parties' central arguments, that each is entitled to judgment as a matter of law based upon the express terms of the contractual indemnity language. Solely for the sake of completeness, the undersigned will merely summarize the parties' positions on this issue.

The indemnity language, located in the Trust Agreement, provides for indemnification of the actions of a Trustee only when taken in accordance with "written instructions or directions of the Employer or Plan Administrator." Waldman and Co. was both the Employer and the Plan Administrator.

The parties agree that to the extent Pitcher incurred the legal fees at issue, it was in defense of the distribution of Pitcher's and Enders' vested account balances into successor qualified deferred retirement accounts, pursuant to the October 2009 Settlement Agreement. The pivotal area of disagreement concerns the interpretation of §3.4 of the Settlement Agreement. Section 3.4 states that "Waldman and/or the Company shall distribute all profit sharing plan assets of Pitcher and Enders on or before November 30, 2009, or within 15 days after the amounts of such contributions are reported to them by Schneider & Brown in accordance with the distribution forms completed by Pitcher and Enders." (Doc. 36 at §3.4). The Waldman Defendants assert that Pitcher failed to act in accord with the "written instructions" of the Settlement Agreement for two reasons: (1) the distribution was to be made exclusively by Waldman and/or his company, with no provision for Pitcher himself to make the distribution; and (2) the written instructions required distribution to be made "before November 30, 2009" – but distribution was delayed by Pitcher until late January or early February, 2010. The Waldman Defendants additionally argue that the indemnity provision does not apply because Pitcher did not act "in good faith" as required by the indemnity provision, or "with the care, skill, prudence, and diligence" required by the Trust Agreement.

Both in response and in support of his own motion for judgment, Pitcher argues that even if the Defendants are "technically" correct that the Settlement Agreement contemplated that Waldman and/or his company would effectuate the distribution, other provisions of the Trust Agreement permitted Waldman to authorize Pitcher to do so.

16

Additionally, the Profit Sharing Plan itself afforded Pitcher, as Trustee, the "discretion to interpret or construe ambiguous, unclear, or implied (but omitted) terms," so long as his discretion was not exercised in an "arbitrary or capricious" manner. Here, Pitcher contends that Waldman "endorsed" Pitcher's actions in authorizing the distribution. (*See* Doc. 35 at 11). With respect to the alleged November 30, 2009 time limit, Pitcher asserts that he timely effectuated the distribution based upon an additional provision in the Settlement Agreement that permitted later distribution "within 15 days after the amounts of such contributions are reported…by Schneider & Brown." Doc. 36 at 2, §3.4. (The Waldman Defendants dispute that distribution was timely even if the alternative date is used). Last, Pitcher offers several arguments in favor of a judicial finding that he fulfilled his Trustee duties in good faith, and with reasonable care and prudence under the circumstances presented. Needless to say, Defendants vigorously disagree.

Again, the Court declines to address the merits of these substantive arguments, based upon the conclusion of the undersigned that this action is prohibited by the doctrine of waiver.

### III. Conclusion and Recommendation

For the reasons explained above, IT IS RECOMMENDED THAT: Defendants' motion for summary judgment (Doc. 24) be GRANTED; that Plaintiff's motion for summary judgment (Doc. 22) be DENIED; that judgment be entered in favor of the Defendants; and that this case be CLOSED.

17

        <u>*s/ Stephanie K. Bowman*</u>
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KENNETH B. PITCHER,                       Case No. 1:12-cv-215

        Plaintiff,                      Weber, J.
v.                                        Bowman, M.J.

LAWRENCE WALDMAN, et al.,

        Defendants.

**NOTICE**

Pursuant to Fed. R. Civ. P 72(b), any party may serve and file specific, written objections to this Report and Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).