UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
AT CINCINNATI

KENNETH B. PITCHER,

                  Plaintiff,

        v.                            Case No. 1:12-cv-215-HJW

LAWRENCE WALDMAN, et al,

                  Defendants

## ORDER

Pending are the parties' cross-motions for summary judgment (doc. nos. 22, 24), the Magistrate Judge's "Report and Recommendation" (doc. no. 44, "R&R"), and the plaintiff's "Objections" thereto (doc. no. 46). The Magistrate Judge recommends that the defendants' motion be granted and that plaintiff's motion be denied. Upon *de novo* review, and having fully considered the parties' briefs and related filings, proposed findings, exhibits, objections, and applicable authority, the Court agrees with the Magistrate Judge. The Court will therefore <u>overrule</u> the objections, <u>grant</u> the Waldman defendants' motion, and <u>deny</u> the plaintiff's motion, for the following reasons:

### I. Background

This case arises from the acrimonious 2009 break-up of the successful accounting firm Waldman, Pitcher, and Co., P.S.C. Kenneth Pitcher and Lawrence Waldman were formerly partners in that firm. The firm's break-up has spawned numerous lawsuits against each other, various audits by the Internal Revenue Service, respective complaints of improper conduct to various professional

1

oversight groups, and protracted contentious litigation of multiple related cases in state and federal courts.[1]

The Magistrate Judge has already recited the pertinent facts of this particular case (doc. no. 44 at 2-6), and those facts are incorporated herein by reference. In his objections, plaintiff acknowledges that "[g]enerally, the facts giving rise to this case are not in dispute" (doc. no. 46 at 1). Review of the objections reflects that plaintiff is essentially disputing the Magistrate Judge's legal conclusions, not any material facts. In their response, defendants omit further repetitive recitation of the facts and indicate "the facts and procedural posture of this case are well-understood by the court and are thoroughly summarized in the Magistrate's Report and Recommendation of February 20, 2013" (doc. no. 47).

To briefly summarize, the parties agreed in their 2009 Settlement Agreement in the "dissolution case" that Waldman's firm would distribute "all profit sharing plan assets of Pitcher and Ender on or before November 30, 2009 or within 15 days

---

[1]  To date, the list includes: Pitcher v. Waldman, Campbell Cty. Circuit Ct. Case No. 09-CI-1491 ("the dissolution case"); Waldman, v. Pitcher, Hamilton Cty. Court of Common Pleas Case No. A1004877 ("the defamation case"); Waldman v. Pitcher, Hamilton Cty. Municipal Court Case No. 10-CV-07526 ("the $810 case"), removed to federal court as OHSD Case No. 10-CV-238; Pitcher v. Waldman, OHSD Case No. 1:11-cv-148 ("the fraud case"); Pitcher v. Waldman, Hamilton Cty. Court of Common Pleas Case No. A1207858; Pitcher v. Waldman, Hamilton Cty. Court of Common Pleas Case No. A 1201601, removed to federal court as OHSD Case No. 1:12-cv-215 ("the indemnity case"). Additionally, several related lawsuits were filed by insurance companies regarding the duty to defend Pitcher and Waldman under commercial liability policies. See Acuity Mutual Insc. Co. v. Waldman, et al, OHSD Case No. 1:11-cv-913; Assurance Co. of Am. v. Waldman, et al, OHSD Case No. 1:13-cv-179.

after the amounts of such contributions are reported to them by Schneider & Brown in accordance with the distribution forms completed by Pitcher and Enders" (doc. no. 24-7, ¶ 3.4).[2] Upon distribution, Pitcher would then resign as Trustee. Pitcher waited until early February 2010 (after the retirement plan for his new firm was established) to direct the remaining portion of such distribution and then resigned on February 24, 2010. According to Waldman, Pitcher, without authority, directed the companies holding the 401k assets to distribute those assets to Pitcher's new retirement plan without subtracting the administrative expenses attributable to those assets.[3] Pitcher contends that his actions did not cause the Plan to incur additional expenses and that the Settlement Agreement provided for a possible later distribution than November 2009. Waldman demanded reimbursement from Pitcher, who refused to pay the $810 in alleged additional administrative expenses. Waldman filed suit in state court, alleging that Pitcher had breached his fiduciary duties as Trustee and breached various contracts (i.e. the Profit Sharing Plan, the Trust Agreement, and the 2009 Separation Agreement). He sought damages, including reimbursement of the $810, costs, and attorneys' fees. Pitcher removed the case to federal court based on jurisdiction pursuant to the Employee Retirement Income Security Act of 1974

---

[2] Michael Ender is not a party here. Schneider & Brown is the Plan Administrator.

[3] Pitcher contends he did have such authority because the Trust Agreement allows co-trustees to authorize another trustee to enter into transactions for the Trust. He interprets the 2009 Settlement Agreement, at ¶ 3.4, to amount to a grant of such authority (doc. no. 35, Pitcher Response). Waldman points out that the express language of the Trust Agreement requires the authorization to come *from the Plan Administrator, not the Trustee* (doc. no. 34 at 1, Waldman's Response).

("ERISA"), 29 U.S.C. § 1132 et seq. Waldman filed an Amended Complaint alleging four claims under ERISA for Pitcher's alleged breach of his fiduciary duties.

Meanwhile, Waldman indicates he was experiencing health issues that caused him to reevaluate his priorities. After a continuance, he moved to voluntarily dismiss the case, which has been pending in federal court for only six months. Later that same day, Pitcher filed a motion for summary judgment. Pitcher opposed voluntary dismissal and alternatively urged that Waldman should pay his attorneys' fees of over $30,000.00 as a condition of dismissal. Waldman responded that Pitcher was not entitled to reimbursement of his attorneys' fees, and moreover, the demanded sum was "exorbitant."

The Magistrate Judge issued an R&R recommending voluntary dismissal without payment of Pitcher's attorneys' fees. The Magistrate Judge pointed out that Pitcher "had not fully explain[ed] the basis for substantial fees, given the relatively short time this suit has been pending, the extremely modest amount in controversy, and the fact that the case was in federal court not due to [Waldman]'s actions but due to [Pitcher's] removal" (S.D. Ohio Case no. 1:10-cv-238, doc. no. 30 at 8). The Magistrate Judge noted that the only court appearance by any party in that case had been a telephonic scheduling conference. A flurry of briefs followed, including objections, responses, replies, supplemental briefs, and exhibits of over 200 pages (S.D. Ohio Case no. 1:10-cv-238, doc nos. 31-34, 36, 37). The matter of attorneys' fees was briefed at considerable length, with Pitcher specifically objecting to "the failure to award [him' reasonable attorney fees" (doc. no. 31 at 1).

4

In his objections, Pitcher argued that voluntary dismissal should be rejected, that his summary judgment motion should be considered, and that "if Pitcher prevailed, he would then be entitled to seek attorney fees under ERISA" (Id.).

The Court agreed with the Magistrate Judge and rejected Pitcher's contention that the dismissal should be conditioned on payment of his attorneys' fees. On September 15, 2011, the Court granted voluntary dismissal without prejudice. Pitcher (as defendant in that case) had the right to appeal, but did not do so. Instead, he demanded the increased sum of $45,507.88 in attorneys' fees from Waldman (as Trustee), who refused to reimburse Pitcher on behalf of the Trust on the grounds that Pitcher was not entitled to such reimbursement. Even though Pitcher had not "prevailed" in the first action (i.e., there was no merits determination as to whether Pitcher had breached his fiduciary duties), he filed suit in state court seeking the same attorneys' fees for defending the prior suit (plus additional fees for filing the present suit) on the grounds of "equitable ERISA relief" and "contractual "indemnification."[4] The case was removed to federal court. In his answer, Waldman asserted that Pitcher is "estopped and/or has waived his right to assert the claims set forth in the First Amended Complaint" (doc. no. 12 at 4, Third Defense).

---

[4] Pitcher asserts that fiduciaries of an ERISA-qualified plan may bring a civil action "to enforce any … terms of the plan." 29 U.S.C. § 1132(a)(3). Pitcher's theory is that he is now seeking to "enforce" the provision of the Trust Agreement that provides indemnification for legal fees incurred in defending "good faith" actions as Trustee (doc. no. 22 at 12, in present case). Although the prior action was dismissed, the parties' current arguments about "good faith" are tantamount to a reassertion of the same arguments regarding those dismissed claims (i.e., Pitcher's alleged breaches of fiduciary duty). Such claims are *not* before the Court.

Both sides now contend they are entitled to summary judgment based on the express language of the Trust Agreement. Although Pitcher argues that the "Trust Agreement specifically entitled [him] to indemnification for legal fees incurred in defending his good faith actions as Trustee" (doc. no. 22 at 12), he did not raise such alleged ground of entitlement in the prior case when he argued for payment of his attorneys' fees. Waldman asserts that Pitcher has waived the right to further pursue an award of those attorneys' fees because Pitcher previously "could have and should have provided the Court with all of the reasons he believed he was entitled to such attorneys' fees, so that this Court could decide the issue in one action, rather than in serial suits" (doc. no. 24 at 5-7). He argues that Pitcher should have brought his claim for attorneys' fees in the prior suit as a compulsory counterclaim pursuant to Fed.R.Civ.P. 13(a). He argues that Pitcher "has waived his right to continue to assert new grounds" for an award of the same attorneys' fees (Id. at 9). Waldman further asserts that Pitcher did not accrue the attorneys' fees for any "good faith" actions as Trustee and is not entitled to reimbursement for attorneys' fees.

After a thorough analysis of the facts and legal posture of the present case, the Magistrate Judge concluded that "while this Court has no power to end the litigation war that the parties seem intent to pursue, it can and should end this particular skirmish, on grounds that Pitcher's present suit is barred both by a general doctrine of waiver and by the specific waiver doctrine applicable under Rule 13(a)," which governs compulsory counterclaims (doc. no. 44 at 15). Pitcher

filed objections (doc. no. 46), and Waldman responded (doc. no. 47).

## II. Review of Objections

The Magistrate Judge Act, 28 U.S.C. § 631 et seq., provides for *de novo* review by the district court when a party timely files written objections to a Magistrate Judge's R&R. The objections must be *specific*; generalized objections that do not "specify the issues of contention" are not sufficient to satisfy the requirement of specific objections. Miller v. Currie, 50 F.3d 373, 380 (6th Cir. 1995); Howard v. Secretary of HHS, 932 F.2d 505, 508-09 (6th Cir. 1991). It is well-settled that simply restating prior arguments does not amount to a proper objection. See, e.g., Holl v. Potter, 2011 WL 4337038, *3 (S.D.Ohio) ("Objections that merely restate arguments raised in the memoranda considered by the Magistrate Judge are not proper"), aff 'd by 506 Fed.Appx. 428 (6th Cir. 2012); Harris v. Morgan, 2012 WL 2505838, *1 (N.D.Ohio) ("An 'objection' that ... simply summarizes what has been presented before ... is not an 'objection' as that term is used in this context."); Miller v. Astrue, 2013 WL 504017, *1 (S.D.Ohio) (J. Barrett) (same).

## III. Discussion

Pitcher objects that the Magistrate Judge "confuses the issue of attorneys' fees and indemnification" (doc. no. 46 at 1). On the contrary, the Magistrate Judge found it unnecessary to address the merits because Pitcher had waived the right to proceed here. The Magistrate Judge found that 1) Pitcher could and should have raised any and all grounds for attorneys' fees in the prior lawsuit, and 2) Pitcher did not appeal the dismissal of that prior case or the specific denial of his request

7

for attorneys' fees (doc. no. 44, R&R discussing several layers of waiver).

In the prior case, Pitcher opposed voluntary dismissal, but argued that if the Court allowed voluntary dismissal, his attorneys' fees should be paid by Waldman. The District Judge considered and rejected Pitcher's request for attorneys' fees as a condition of voluntary dismissal. Fed.R.Civ.P. 41. Pitcher did not appeal that dismissal. As the Magistrate Judge correctly observed, Rule 41 dismissals are appealable by defendants. See, e.g., Bridgeport Music, Inc. v. Universal—MCA Music Publ'g, Inc., 583 F.3d 948, 954 (6th Cir. 2009); DWG Corp. v. Granada Invs., Inc., 962 F.2d 1201, 1202 (6th Cir. 1992). By failing to appeal, Pitcher has waived the right to pursue reimbursement for those same attorneys' fees here. See, e.g., Balding-Margolis v. Cleveland Arcade, 352 Fed.Appx. 35, 40 fn.2 (6th Cir. 2009) (holding that plaintiff had failed to appeal the district court's dismissal, and thereby waived the issue).

Plaintiff ignores the fact that he did not appeal, and instead, addresses only the underlying layer of waiver. Plaintiff objects to the Magistrate Judge's finding that he had "waived any right to indemnification because his claim was a compulsory counterclaim, or alternatively, Pitcher's claims are precluded based on notions of res judicata" (doc. no. 46 at 1).[5] Plaintiff now asserts that his alleged

---

[5] The familiar concepts of res judicata (claim preclusion) and collateral estoppel (issue preclusion) bar the relitigation of matters that have previously been litigated and decided (or that could have been advanced in the previous litigation). Under claim preclusion, a final judgment forecloses "successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit." New Hampshire v. Maine, 532 U.S. 742, 748 (2001); see also, In re Alfes, 709 F.3d 631, 638 (6th Cir. 2013). Issue preclusion bars successive litigation

entitlement to attorneys' fees from the prior case is "a new standalone cause of action" (Id. at 5). He acknowledges that in the prior case, he did not raise his alleged entitlement to reimbursement for attorneys' fees under the Settlement Agreement or Trust Agreement (doc. no. 36, ¶ 22, Proposed Findings).[6]

The Court is not persuaded by plaintiff's argument that the Magistrate Judge "confuses the issue of attorneys' fees and indemnification." On this point, plaintiff cites no case law in support, and instead, argues that several cases cited by the Magistrate Judge are distinguishable because they allegedly do not involve "indemnification" (doc. no. 46 at 3). A closer look at the cited authority reflects otherwise. For example, in Dryvit Systems, Inc. v. Great Lakes Exteriors, 96 Fed.

---

of a fact or legal issue that was "actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." New Hampshire, 532 U.S. at 748–749; Taylor v. Sturgell, 553 U.S. 880, 891 (2008); Georgia-Pacific Consumer Products LP v. Four-U-Packaging, Inc., 701 F.3d 1093, 1098 (6th Cir. 2012). If a court decides the merits of an issue, a plaintiff may not   relitigate that issue in a subsequent suit. Pram Nguyen ex rel. U.S. v. City of Cleveland, 534 Fed.Appx. 445, 452 (6th Cir. 2013). "Where a litigant brings repeated actions based upon the same operative facts, issue preclusion may still properly apply despite a change in legal theory." Georgia-Pacific, 701 F.3d at 1098; Ark. Coals, Inc. v. Lawson, 739 F.3d 309, 320-21 (6th Cir. 2014).

[6] While the formation and enforceability of a settlement agreement are covered by state contract law, Bamerilease Capital Corp. v. Nearburg, 958 F.2d 150, 152 (6th Cir.), cert. denied, 506 U.S. 867 (1992), federal law governs whether a party is precluded from relitigating an issue or claim that was previously decided by a federal court in a federal-question case. EB–Gran Prods v. Warner, 242 Fed. Appx. 311, 312 (6th Cir. 2007) (citing Blonder–Tongue Labs., Inc. v. Univ. of Ill. Found., 402 U.S. 313, 324 n. 12 (1971) ("It has been held in non-diversity cases since Erie R. Co. v. Tompkins, that the federal courts will apply their own rule of res judicata."); Restatement (Second) of Judgments § 87 ("Federal law determines the effects under the rules of res judicata of a judgment of a federal court.").

Appx. 310 (6th Cir. 2004), the case history reflects that Great Lakes Exteriors had brought a prior suit against Dryvit for breach of contract, but lost the case. Dryvit, having prevailed as defendant in the first case, filed a second suit (cited above) to enforce its "contractual right to attorneys' fees." The contract at issue specifically provided that "the prevailing party in any ... adversary proceeding involving ... breach of this Agreement shall be entitled to  ... reasonable attorneys' fees ... incurred by the prevailing party." The trial court dismissed the second suit. The Sixth Circuit Court of Appeals affirmed on the basis that the second suit was barred because any entitlement to attorneys' fees under the contract *should* have been litigated in the first case. While the <u>Dryvit</u> case is unpublished, this Court finds its facts to be similar and its reasoning to be persuasive. Plaintiff's objection lacks merit. Such objection also does not address plaintiff's failure to appeal.

To the extent plaintiff also objects that "claims for indemnification cannot be compulsory counterclaims as such claims do not accrue until the indemnitee's liability becomes fixed and certain," <u>Dryvit</u> considered and rejected these same arguments. See 96 Fed. Appx at 312 (dismissing second suit and rejecting argument that the prevailing party is not determined until the final judgment and that the amount of attorneys' fees it will take to defend an action is unknown at the pleading stage). Plaintiff relies on several out-of-state decisions that are distinguishable on the facts and are not binding here (doc. no. 46 at 4-5).[7]

---

[7] In the usual case where the attorneys' fees are collateral to the main cause of action, Civil Rule 54 anticipates that parties will bring any grounds for payment of the attorneys' fees to the court's attention in a timely manner. After a judgment is

Waldman responds by pointing to the express language of Fed. R. Civ. Proc. 13(a): "A pleading shall state as a counterclaim any claim which at the time of serving the pleading the pleader has against any opposing party, if it arises out of the same transaction or occurrence that is the subject matter of the opposing party's claim and does not require for its adjudication the presence of third parties of whom the court cannot acquire jurisdiction" (doc. no. 47). Pitcher's present claim for indemnity for attorneys' fees arises from the "same occurrence" which formed the basis of Waldman's claim in S.D. Ohio Case No. 1:10-cv-238.

Generally, a party's failure to assert a compulsory counterclaim serves as a bar to the initiation of a subsequent suit on that same claim. Baker v. Gold Seal Liquors, 417 U.S. 467, 468-69, fn.1 (1974) ("A counterclaim which is compulsory but is not brought is thereafter barred"); Tyler v. DH Capital Mgmt., Inc., 736 F.3d 455, 460 (6th Cir. 2013) (addressing the argument that unraised compulsory counterclaims in a case voluntarily dismissed without prejudice should not be subsequently barred and observing that "there will be situations where such claims are barred"); see also, e.g., Air Products and Controls, Inc. v. Safetech Intern., Inc., 2006 WL 1420831, *2 (E.D.Mich. 2006) (holding that Air Products should have raised its claim for attorneys' fees in the earlier "breach of contract" litigation as a compulsory counterclaim and is "now precluded from submitting this issue for consideration in the present lawsuit"). As the Magistrate Judge

entered, Rule 54(d)(2) provides that a claim for attorneys' fees must be made by motion and must "specify . . . the statute, rule, or other grounds entitling the movant to the award" Fed.R.Civ.P. 54(d)(2)(B)(ii).

correctly noted, Rule 13 embodies the concept of waiver. <u>Tyler</u>, 736 F.3d at 460 (observing that the "Rule 13 bar is motivated not only by res judicata principles, but also waiver and estoppel"). In short, in whatever form, the concept of waiver applies here, as Pitcher has previously been afforded ample opportunity to assert and argue his alleged entitlement to reasonable attorneys' fees. Although the parties' arguments and contentious litigation tactics have needlessly complicated this matter, the proper resolution of the present case is dictated simply by its own unusual facts.

## IV. Conclusion

In the prior suit, Waldman's claims (that Pitcher breached his fiduciary duties as Trustee) were voluntarily dismissed, but the issue of payment of Pitcher's alleged attorneys' fees as a condition of dismissal was fully briefed, expressly considered, and rejected by the Court. Pitcher did not appeal that decision and may not seek those same attorneys' fees in a new suit, particularly since he was not a prevailing party under ERISA and there was no determination with respect to the voluntarily dismissed claims for breach of fiduciary duty. The Magistrate Judge recommended that the plaintiff may not relitigate the same attorneys' fees here. Plaintiff's objections have not pointed to any specific legal errors in the Magistrate Judge's analysis. The Court agrees with the Magistrate Judge's thoughtful analysis. Pitcher may not seek further attorneys' fees for attempting to relitigate the waived claims.

## V. Oral Argument Not Warranted

12

Local Rule 7.1(b)(2) provides that courts have discretion whether to grant requests for oral argument. The parties have exhaustively briefed the relevant issues. The Court finds that oral argument is not warranted. <u>Himes v. United States</u>, 645 F.3d 771, 783-84 (6th Cir. 2011); <u>Yamaha Corp. of Am. v. Stonecipher's Baldwin Pianos & Organs</u>, 975 F.2d 300, 301-02 (6th Cir. 1992); <u>Schentur v. United States</u>, 4 F.3d 994, 1993 WL 330640 at *15 (6th Cir. (Ohio)) (observing that district courts may dispense with oral argument on motions for any number of sound judicial reasons).

Accordingly, the Court <u>OVERRULES</u> the plaintiff's "Objections" (doc. no. 46); <u>GRANTS</u> the defendants' "Motion for Summary Judgment" (doc. no. 24); and <u>DENIES</u> the plaintiff's "Motion for Summary Judgment" (doc. no. 22). The parties shall bear their own costs of this action. This case is hereby <u>DISMISSED</u> with prejudice and <u>TERMINATED</u> from the docket of this Court.

IT IS SO ORDERED.

s/Herman J. Weber
Herman J. Weber, Senior Judge
United States District Court

13